<div style="text-align:right">CASTLEMAN<br>vs.<br>COMBS, &c.</div>

---

## *Wood vs. F. & M. Bank of Lexington, and others.*

CHANCERY.

Appeal from the Nelson Circuit; PAUL I. BOOKER, Judge.

Case 52.

*Bills of Exchange. Statutes. Damages.*

Chief Justice BIBB delivered the Opinion of the Court.

May 8.

Nathaniel B. Wood, a resident of this State, drew a bill of exchange for $5,000, payable, one hundred and twenty days after date, to the order of Martin H. & Nathaniel Wickliffe, dated at Bardstown, on the first day of Dec. 1819, and addressed to Mr. James I. Wood, New Orleans. This bill being endorsed by M. H. & N. Wickliffe, and Philip Reed, was purchased of the drawer by the Farmers' & Mechanicks' Bank of Lexington, and protested when at maturity, because, upon search,

Bill of exchange.

Wood
vs.
F. &M. Bank
of Lex. &c.

Note given
for the bill.

Suit on the
note and the
claim assign-
ed to Wick-
liffe.

Judgment for
plaintiff a-
gainst Wood.

Bill of Wood
claiming
credits, and
to be relieved
against dam-
ages on the
bill, included
in the note.

Decree of the
circuit court.

the drawee could not be found, and no person would pay.

In consideration of this bill and protest, the drawer and endorsers executed their joint and several note to the Bank, dated 15th May, 1820, for $5623 74, payable ninety days after date. This note was not paid when due.

On the 6th Dec. 1820, the Bank received and credited on the note, the sum of $1,500. It was afterwards put in suit, and pending this suit the President, Directors & Co. by a writing on a seperate paper, assigned this note to Robert Wickliffe, reciting that credit, and the pendency of the suit, authorizing said Wickliffe to prosecute, direct, and control the suit in their name, but at his costs; to use all legal means to recover the sum due, deducting the credit. The said Wickliffe received the transfer "of said note and suit on the responsibility of the drawers, and without recourse to the said President, Directors, and Company."

Judgment was obtained on behalf of the corporation, Wickliffe issued execution, with credit for $1,500, paid to the Bank; also, for $1,125 as paid on the 15th May, 1823.

In July, 1823, Nathaniel B. Wood exhibited his bill for relief, claiming a credit for $2,200, paid to Nathaniel Wickliffe on the 5th February, 1823, instead of the credit of $1,125, as of the 15th May. He alleges that N. Wickliffe was, by letter from said Robert Wickliffe, authorized to apply for and receive the money; and he exhibits the receipt of said N. Wickliffe for $2,200, of the date of the 5th February, 1823, expressing the money was received for Robert Wickliffe; claiming also, a credit for ten per cent and interest thereon, improperly included in the note for damages of protest, of $500, and interest thereon, when no damages were chargeable by law on said bill. For these two credits, so claimed, he obtained an injunction. Afterwards, by supplemental bill, he claimed an additional credit for $75.

The circuit judge allowed the credit of $2,200, of the 5th Feb. 1823, instead of that of $1,125 as given,

but rejected the others, and dissolved the injunction in part, with damages. From this decree Wood appealed.

<div style="margin-right">Woods vs. F. & M. Bank of Lex. &c.</div>

The credit of $2,200, in place of that of $1,125, was properly allowed. That Nathaniel Wickliffe was authorized by his brother Robert to receive the money of Wood, is established as well by the proof as by the answer. The letter to Nathaniel, charged in the bill, is admitted by the answer: the authority was unconditional. The receipt of Nathaniel Wickliffe is proved by the subscribing witness; it is for $2,200, "in part of the amount due Robert Wickliffe." The language of the receipt is too plain to be misunderstood.

<div style="margin-right">Credit for the $2200 allowed.</div>

The credit for $75 was properly rejected. The claim rests upon proof, that at the time of the transaction for which the receipt was given, Wood paid to Nathaniel, on account of Robert Wickliffe, twelve hundred dollars in money, and two bonds amounting to $1075; this sum of $75 is claimed as not included in the receipt of the 5th February. But the same attesting witness to the receipt proves, that those notes, by indorsement, were to be discharged by $1000, if paid when due, which was expected, and therefore they were paid, and accepted and receipted for, at $1000.

<div style="margin-right">Claim of the credit for $75 dissallowed.</div>

The proof is explicit, that for years before and since the date of the bill of exchange, the drawee, J. I. Wood, has resided in the county of Shelby in this state. Hence it is argued, that no damages are due upon the bill, because it was drawn upon a resident of this state, and not upon a person out of the state. The statute which was then in force, and not repealed until the 10th of January, 1820, (although in the Digest, by mistake, the repealing law is stated to have been enacted in 1819, see 1 Dig. chap. XXX, sec. 5, p. 194,) is thus expressed: "If any person or persons shall draw or endorse any bill or bills of exchange, upon any person or persons out of this state, on any other person or persons within any other of the United States of North America, and the same being returned back unpaid, with a legal protest, the drawer thereof, and all oth-

<div style="margin-right">A bill of exchange drawn in Ky. and addressed Mr. J. I. W. N. Orleans, is a bill drawn upon a person out of this state, within the meaning of the 5th sec. of the act of 1798, and damages were recoverable on it.</div>

Wood
vs.
F. & M. Bank
of Lex. &c.

crs concerned, shall pay the contents of said bill or bills, together with legal interest from the time the said bill or bills were protested, the charges of protest, and ten pounds per cent. advance for the damages thereof." This statute does not speak of a person residing out of this state. The expression relates to a bill "upon any person or persons out of this state," within any other of the United States. The bill in question was drawn on "Mr. James I. Wood, New Orleans." Upon the face of the bill it is drawn upon a person as of New Orleans; and every person reading the bill, would expect that J. I. Wood would be found in New Orleans, to answer to the bill when presented for acceptance or payment. Of consequence, it is a bill drawn upon a person out of this state, within the meaning of the statute.

Otherwise held in Hopkins vs. Clay, 3 Mar. 448, where by previous agreement, the bill was accepted by Hopkins in Kentucky, where he resided.

The counsel for Wood has cited the case of Hopkins vs. Clay, 3 Marsh. 488, and insists, that according to the principle settled in that case, no damages are due upon this bill. Upon that case it is worthy of remark, that the bills were drawn upon, and accepted by, Hopkins, in this state; the sale under the decree of the court was made here; Hopkins purchased at the sale, and instead of a note, as required by the direction to the commissioner, the bills were drawn by the agent of the complainant in the suit, upon Hopkins, the purchaser, then in Kentucky, residing here, and the bills were accepted here, although by their terms made payable in Baltimore. Whether those bills did, or did not, shew upon their face, that Hopkins was of Kentucky, by being so addressed to him, although made payable in Baltimore, does not certainly appear from the report of the case; but it does appear that these bills were drawn and accepted in Kentucky, by a previous arrangement between Clay, the drawer, and Hopkins, the drawee and acceptor, and the whole business was transacted in Kentucky; so that no presumption could have been indulged, nor any belief created by the transaction, that Hopkins was of Baltimore when the bill was drawn upon him, and accepted by him. It was a case between drawer, who must have known the drawee and his place of abode, and this same drawee, who accepted at the very time of the drawing.

Therefore, the court declared that those bills did not come within the letter of the statutes of 1793 and 1798; "for the bills in question were drawn upon Hopkins, who was within this state;" and that the circumstance of their being payable in Baltimore did not bring them within the statute.

These differences between the bills in the case of Clay and Hopkins, and the bill in question, are deemed sufficient, by Judges Owsley and Mills, to take this bill out of the principle of the decision in Hopkins vs. Clay; therefore, that the damages were properly due, and charged upon this bill. The Chief Justice concurs in allowing damages upon the bill, because, according to his understanding, a bill drawn expressly for payment at a particular place, or addressed to a person at a particular place, is a bill drawn on that place, and if that place be without this state, it is a bill drawn upon a person out of this state, in the mercantile sense and style; and within the predicaments of the statute. By the opinion of the whole court, the Bank had a right to the damages charged; therefore, the complainant is not entitled to the credit claimed on that account.

It seems to this court, that there is no error in the decree of the circuit court. It is, therefore, ordered and decreed, that the decree be affirmed with costs, and damages on the damages given upon dissolution.

Appellee to have his costs.

*Denny* and *Rudd,* for appellant; *Wickliffe,* for appellee.